IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| MOUSSA DIAWARA,<br><br>Petitioner,<br><br>v.<br><br>Warden of Prairieland Detention Center; JOSH JOHNSON, in his official capacity as Field Office Director, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations, Dallas Field Office; MARKWAYNE MULLIN, Secretary of the Department of Homeland Security; TODD BLANCHE, Acting Attorney General,<br><br>Respondents. | Case No. 4:26-cv-6103<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>Agency No.: 087-460-941 |

## INTRODUCTION

1. This emergency action concerns the Government's imminent attempt to remove a man whom the United States has protected from removal to Mali for approximately fourteen years—not to Mali directly, but to Ghana, a third country to which Petitioner has no meaningful connection and from which he faces the grave danger of onward removal to Mali.

2. In approximately 2012, after adjudicating Petitioner's application for protection, an Immigration Judge granted Petitioner withholding of removal to Mali pursuant to INA § 241(b)(3). That protection remains valid. DHS has never terminated, reopened, or vacated the withholding grant.

3. Consistent with that protection, DHS allowed Petitioner to live in the United States for approximately fourteen years. Petitioner has maintained employment authorization under

category (a)(10)—the category specifically applicable to individuals granted withholding of removal. He built his life here with his United States citizen wife and their two United States citizen children.

4. On July 11, 2026, ICE abruptly arrested Petitioner. He was subsequently transferred hundreds of miles from his family and ultimately detained at the Prairieland Detention Center in Alvarado, Texas.

5. DHS has now informed Petitioner that it intends to remove him to Ghana. The threat is no longer hypothetical. On July 29, 2026, Petitioner was given his civilian clothing and prepared for deportation. Upon information and belief, DHS intends to remove him from the United States imminently, potentially within hours.

6. Yet Petitioner has never received a meaningful opportunity before a neutral adjudicator to assert his statutory and constitutional objections to removal to Ghana, including his fear of persecution or torture there and the serious danger that Ghana will transfer him onward to Mali—the precise country to which an Immigration Judge has already determined the United States may not lawfully return him.

7. That process matters. The Board of Immigration Appeals has expressly held that when DHS proposes removal to a country different from the country addressed in prior withholding proceedings, the noncitizen may seek withholding of removal from the newly proposed country. *Matter of A-S-M-*, 28 I. & N. Dec. 282, 283, 285–86 (BIA 2021).

8. The Government cannot recognize a substantive right to seek protection from a newly identified country while simultaneously effectuating removal before the individual has a meaningful opportunity to invoke that right. A right that disappears the moment the airplane departs is no right at all.

9. Federal courts confronting precisely this practice have repeatedly recognized the same principle. Most recently, in *Dia v. Raycraft*, No. 1:26-cv-1054 (W.D. Mich. May 27–28, 2026), the court preliminarily enjoined ICE from removing a Senegalese national who had withholding protection to Ghana or another third country until he had "a full and fair opportunity to raise a fear-based claim" concerning that country before an Immigration Judge. The court thereafter retained habeas jurisdiction over precisely that third-country-removal claim.

10. The Southern District of Texas has likewise recognized both the third-country protection right and ICE's obligation to comply with its own mandatory regulations when re-detaining a person previously released under supervision. *Villanueva Herrera v. Tate*, No. 4:25-cv-03364 (S.D. Tex. Sept. 26, 2025). There, the court granted habeas relief to an individual with withholding protection, ordered his immediate release, and directed ICE, once it identified a third country willing to accept him, to notify him and counsel with sufficient time to object.

11. Petitioner separately challenges the manner in which Respondents extinguished approximately fourteen years of supervised liberty. The regulations governing post-order supervision do not permit ICE simply to seize an individual from the community and disregard the procedures the agency itself promulgated. Among other protections, 8 C.F.R. § 241.4(l) requires legally authorized revocation, notice of the reasons for revocation, and a prompt opportunity to respond.

12. Upon information presently available to counsel, Respondents provided Petitioner no valid revocation determination by an authorized official, no meaningful notice explaining the grounds for revoking his longstanding release, and no prompt informal interview at which he could respond.

13. Those procedures are mandatory. DHS chose to promulgate them. DHS chose to specify who may revoke supervised release. DHS chose to require notice. DHS chose to require an opportunity to respond. Having adopted those safeguards, the agency must follow them. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954); *Gulf States Mfrs., Inc. v. NLRB*, 579 F.2d 1298, 1308 (5th Cir. 1978).

14. Petitioner does not ask this Court to review or vacate his final order of removal. Nor does he contend that withholding of removal to Mali categorically prevents DHS from ever removing him to another lawful country.

15. He asks for something considerably narrower: that Respondents not remove him to Ghana—or any other newly identified third country—before affording him meaningful notice and a genuine opportunity to invoke the protection Congress, the regulations, and the BIA recognize as applicable to that proposed country, and that Respondents comply with their own mandatory rules governing the revocation of his longstanding supervised liberty.

16. Without immediate intervention, Respondents may remove Petitioner before this Court can adjudicate those rights. Once delivered into the custody of Ghana, this Court's ability to preserve meaningful relief may be severely impaired or destroyed altogether.

17. Petitioner therefore seeks emergency habeas and injunctive relief prohibiting his removal to Ghana, Mali, or another third country pending a full and fair opportunity to pursue country-specific withholding and Convention Against Torture protection and pending adjudication of this Petition.

## JURISDICTION

18. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

19. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

20. This Court additionally has jurisdiction under 28 U.S.C. § 1331 over Petitioner's claims arising under federal law and the Fifth Amendment.

21. The Court may grant declaratory relief pursuant to 28 U.S.C. §§ 2201–2202 and appropriate equitable relief pursuant to 28 U.S.C. §§ 2241, 2243, and 1651.

22. Section 2241 remains available to challenge the legality of immigration detention and other restraints upon liberty that do not seek review of the merits of a final removal order. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005).

23. Petitioner does not seek review of the Immigration Judge's underlying removal determination. To the contrary, Petitioner relies upon the continuing validity of that order, including its grant of withholding of removal to Mali.

24. Petitioner instead challenges Respondents' present and imminent conduct, which is their attempt to execute removal to a newly identified country without the process required to invoke protection from that country, and their failure to comply with mandatory procedures governing the revocation of Petitioner's supervised release.

25. The Southern District of Texas has recently held that §§ 1252(a)(2)(B) and 1252(g) do not eliminate habeas jurisdiction over materially indistinguishable procedural and constitutional challenges to the manner in which DHS re-detains a person with withholding protection and seeks third-country removal. *Villanueva Herrera*, No. 4:25-cv-03364.

26. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et. seq., the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

**VENUE**

27. Venue is proper in the Southern District of Texas because Petitioner is presently confined at Prairieland Detention Center 1209 Sunflower Lane Alvarado, Texas 76009.

**PARTIES**

28. Petitioner Moussa Diawara, A# 087-460-941, is a native and citizen of Mali presently detained by ICE at the Prairieland Detention Center.

29. Respondent Warden, Prairieland Detention Center, is the facility administrator and Petitioner's immediate physical custodian at the Prairieland Detention Center, 1209 Sunflower Lane, Alvarado, Texas 76009. Respondent is sued in his or her official capacity.

30. Respondent Josh Johnson is the Field Office Director for U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations, Dallas Field Office. In that official capacity, he oversees ICE detention and removal operations within the Dallas Field Office's area of responsibility, including operations concerning Petitioner at the Prairieland Detention Center, and has authority concerning Petitioner's detention, transfer, and execution of removal. He is sued solely in his official capacity.

31. Respondent, Markwayne Mullin is the Secretary of DHS, which is ICE's parent agency. In his official capacity, he oversees and directs the activities of ICE, including its detention operations in Mississippi and elsewhere. He therefore has constructive custody of Petitioner, in that he can direct ICE to release him from custody.

32. Respondent Todd Blanche, is the Acting Attorney General. In his official capacity, he is charged with making determinations as to removability, asylum eligibility, and immigration custody, all of which are binding on DHS and its components. He therefore has constructive custody of Petitioner, in that he has the capacity to compel ICE to release him.

**STATEMENT OF FACTS**

33. Petitioner was born on January 12, 1969 and is a native and citizen of Mali. Petitioner entered the United States in approximately 2001 with a nonimmigrant visitor visa. Petitioner has remained in the United States continuously since that time. Petitioner subsequently sought protection from removal.

34. On February 02, 2012 the Immigration Court in New York adjudicated Petitioner's request for protection.

35. The Immigration Judge granted Petitioner withholding of removal pursuant to INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), as to Mali.

36. A true and correct copy of the Immigration Judge's order is attached as Exhibit A.

37. The Government did not thereafter obtain termination or vacatur of Petitioner's withholding protection. The withholding order therefore remains legally operative.

38. Section 1231(b)(3)(A) provides that the Government "may not remove" a noncitizen to a country when the Attorney General has determined that the individual's life or freedom would be threatened there on account of a protected ground.

39. Petitioner thus cannot lawfully be removed directly to Mali while the withholding order remains in force.

40. Following the withholding grant, DHS permitted Petitioner to reside in the community. Petitioner remained at liberty for approximately fourteen years.

41. During that period, Petitioner received employment authorization pursuant to category A10, which corresponds to a grant of withholding of deportation or removal.

42. Petitioner built substantial family, employment, and community ties during those years. Petitioner is married to a United States citizen.

43. Petitioner and his wife have two United States citizen children, presently approximately sixteen and eleven years old.

44. Petitioner has worked for many years, including as an Uber driver, supported his household, and filed taxes with his wife, who works as a registered nurse.

45. Upon information presently available to counsel, Petitioner complied with his immigration supervision requirements during his approximately fourteen years at liberty.

46. Petitioner was not hiding from DHS. He lived openly, maintained employment authorization issued by the Federal Government, worked, supported his family, and remained available to immigration authorities.

47. At approximately 5:00 a.m. on July 11, 2026, ICE officers arrested Petitioner near his residence in Houston, Texas, as he was returning home from work.

48. Petitioner was initially detained in the Houston area.

49. He was thereafter transferred from the community in which he had resided for many years and ultimately confined at Prairieland.

50. Upon information and belief, Respondents did not provide Petitioner before or immediately after his arrest with a written, legally authorized determination revoking his longstanding supervised release.

51. Upon information and belief, Respondents did not identify any violation of the conditions under which Petitioner had lived in the community.

52. Upon information and belief, Respondents did not provide Petitioner with meaningful written notice explaining the factual basis for revocation.

53. Upon information and belief, Respondents did not provide Petitioner with the prompt informal interview contemplated by 8 C.F.R. § 241.4(l)(1) at which he could respond to the purported basis for revocation.

54. Since Petitioner's arrest, DHS has identified Ghana as the country to which it intends to remove him.

55. Ghana was not the country from which Petitioner received withholding protection.

56. Petitioner is not a citizen of Ghana.

57. Upon information and belief, Petitioner has no meaningful prior residence, immigration status, citizenship, or other durable connection to Ghana.

58. DHS's selection of Ghana therefore creates a new country-specific protection issue that was not adjudicated when Petitioner obtained withholding from Mali.

59. Petitioner has not received a full and fair hearing before an Immigration Judge concerning his fear of removal to Ghana.

60. He has not had a meaningful opportunity to develop or present evidence concerning persecution, torture, detention, or other dangers associated with removal to Ghana.

61. Nor has he been afforded a meaningful opportunity to establish the danger of onward removal from Ghana to Mali, which would accomplish indirectly what the existing withholding order prohibits DHS from doing directly.

62. On July 29, 2026, Petitioner informed his family that detention officials had returned or provided him his civilian clothing in preparation for deportation.

63. Upon information and belief, Respondents intend to remove Petitioner from the United States imminently and potentially today.

64. Petitioner therefore faces a real and immediate threat of physical removal before he can obtain adjudication of his right to seek withholding or CAT protection applicable to Ghana.

65. Once Respondents transfer Petitioner into foreign custody, his ability to obtain meaningful judicial protection may be drastically impaired or eliminated.

66. The harm is therefore not speculative. It is occurring now.

## LEGAL STANDARDS

### A. Withholding prohibits removal to a country where the statutory standard has been established.

67. Congress expressly provided: "[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country" because of a protected ground. 8 U.S.C. § 1231(b)(3)(A).

68. CAT regulations independently prohibit removal to a country where the noncitizen establishes that he is more likely than not to be tortured. See 8 C.F.R. §§ 1208.16(c), 1208.17.

69. Thus, a withholding grant concerning Mali does not categorically prohibit lawful removal to every other country. But that principle does not permit DHS to circumvent withholding by selecting another country and removing the individual before he can raise a statutory protection claim concerning that newly selected destination.

### B. Matter of A-S-M- confirms the right to seek protection from a newly proposed country.

70. The Board of Immigration Appeals squarely addressed this problem in Matter of *A-S-M-*, 28 I. & N. Dec. 282 (BIA 2021).

71. There, DHS proposed removing an individual to a country different from the one identified in his prior removal proceedings.

72. The BIA held: "Where the Department of Homeland Security states that an applicant may be removed to a country pursuant to section 241(b)(2) of the Immigration and Nationality Act, the applicant may seek withholding of removal from that country in withholding-only proceedings, even if that country is different from the country of removal that was originally designated." *Matter of A-S-M-,* 28 I. & N. Dec. at 282.

73. The rule follows directly from § 1231(b)(3): withholding protects a person from a particular country in which the requisite threat exists, and the statute cannot operate unless the person has a meaningful opportunity to present the claim applicable to the country DHS actually proposes to use.

74. Petitioner therefore possesses the right to seek withholding and, where applicable, CAT protection concerning Ghana.

75. Removing him first and allowing him to seek protection afterward would extinguish the right before it could be exercised.

### C. Federal courts have repeatedly required meaningful process before third-country removal

76. In *Dia v. Raycraft*, No. 1:26-cv-1054 (W.D. Mich. May 27, 2026), ICE proposed to remove a Senegalese national with longstanding withholding protection to Ghana.

77. The district court prohibited ICE from removing him to Ghana "or any other third country" until he received a full and fair opportunity to raise a fear-based claim before an Immigration Judge.

78. On May 27, 2026, the court converted its temporary restraining order into a preliminary injunction. The following day, it expressly retained habeas jurisdiction over the petitioner's claim that removal to Ghana without an opportunity to raise a fear-based claim violated federal law and the Due Process Clause. *Dia v. Raycraft*, No. 1:26-cv-1054 (W.D. Mich. May 27–28, 2026).

79. Other courts have reached materially similar conclusions. *See, e.g., Sinanaj v. Scott*, No. 2:26-cv-608 (W.D. Wash. Mar. 12, 2026) (requiring written notice and meaningful opportunity to respond in reopened removal proceedings before removal to a country other than the protected country); *Feh v. Noem*, No. 3:26-cv-00578 (S.D. Cal. Mar. 11, 2026) (enjoining third-country removal absent notice and meaningful opportunity to raise fear-based protection); *Esmaeili v. Noem*, No. 3:26-cv-00203 (S.D. Cal. Jan. 29, 2026) (prohibiting removal to a third country without notice and meaningful opportunity to be heard).

80. The principle predates the present third-country-removal policy. *See Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009–11 (W.D. Wash. 2019) (due process and § 1231 require a meaningful opportunity to raise withholding protection applicable to the actual proposed country of removal).

**D. The nationwide D.V.D. litigation confirms the continuing controversy but does not eliminate the need for individual habeas relief.**

81. The legality of DHS's recent third-country-removal practices has also been litigated nationwide in *D.V.D. v. Department of Homeland Security*, No. 1:25-cv-10676-BEM (D. Mass.).

82. On April 18, 2025, the District of Massachusetts entered a preliminary injunction regulating third-country removals and requiring procedures intended to provide meaningful notice and an opportunity to raise country-specific fear claims.

83. On June 23, 2025, the Supreme Court stayed that preliminary injunction pending appellate proceedings. *Department of Homeland Security v. D.V.D.*, 606 U.S. ___, 145 S. Ct. 2153 (2025).

84. The Supreme Court's stay did not adjudicate the ultimate merits of an individual noncitizen's statutory or constitutional right to meaningful process before third-country removal. The Court issued no majority opinion resolving those questions.

85. Litigation thereafter continued in the District of Massachusetts.

86. On February 25, 2026, after merits proceedings, the district court entered final judgment for the class on significant claims. Among other things, it declared that class members possess a right to meaningful notice before third-country removal and a meaningful opportunity to assert a country-specific claim, and it set aside DHS's March 30, 2025 and ICE's July 9, 2025 third-country-removal policies. *D.V.D. v. DHS*, No. 1:25-cv-10676-BEM, Final Judgment, ECF No. 242 (D. Mass. Feb. 25, 2026).

87. On March 16, 2026, the First Circuit granted the Government's motion to stay that final judgment pending appeal. *D.V.D. v. DHS*, No. 26-1212 (1st Cir. Mar. 16, 2026).

88. Petitioner therefore does not contend that the D.V.D. final judgment presently supplies an operative nationwide injunction protecting him.

89. The history of D.V.D., however, demonstrates the serious and continuing statutory and constitutional concerns generated by removal to newly designated third countries without meaningful country-specific process.

90. More importantly, nothing about the stay of nationwide class relief deprives this Court of authority to adjudicate Petitioner's individual habeas claims concerning his own imminent removal.

91. Indeed, courts adjudicating individual petitions after the Supreme Court's D.V.D. stay have granted precisely such relief, including Dia, Sinanaj, Feh, and Esmaeili.

## FIRST CLAIM FOR RELIEF
## FIFTH AMENDMENT PROCEDURAL DUE PROCESS — IMMINENT THIRD-COUNTRY REMOVAL WITHOUT MEANINGFUL NOTICE AND OPPORTUNITY TO BE HEARD

92. Petitioner repeats and realleges all preceding paragraphs.

93. The Fifth Amendment protects every person physically present in the United States from deprivation of liberty without due process of law. *Zadvydas*, 533 U.S. at 693

94. Removal to Ghana exposes Petitioner to profound and potentially irreversible consequences.

95. Petitioner has a protected interest in invoking the statutory and regulatory protections Congress and the Executive have provided against persecution and torture in a proposed country of removal.

96. DHS has identified Ghana as a proposed country of removal.

97. Under *Matter of A-S-M-,* that identification gives rise to Petitioner's ability to seek withholding protection applicable to Ghana.

98. Respondents nevertheless seek to remove Petitioner without first providing a meaningful opportunity to present that claim before a neutral adjudicator.

99. The process presently afforded creates an intolerable risk of erroneous and irreversible deprivation because removal itself may render the statutory protection impossible to exercise.

100. This danger is magnified by the risk that Ghana may remove Petitioner onward to Mali, thereby indirectly exposing him to the very harm the Immigration Judge's existing withholding order was entered to prevent.

101. Basic procedural due process requires meaningful notice and a meaningful opportunity to be heard before, not after, the irreversible deprivation occurs.

102. Respondents' attempt to remove Petitioner to Ghana without such process violates the Due Process Clause of the Fifth Amendment.

## SECOND CLAIM FOR RELIEF
## ACCARDI VIOLATION — FAILURE TO FOLLOW MANDATORY REGULATIONS GOVERNING REVOCATION OF SUPERVISED RELEASE

103. Petitioner repeats and realleges all preceding paragraphs.

104. For approximately fourteen years following his grant of withholding, DHS permitted Petitioner to live in the community subject to whatever post-order conditions of supervision it imposed.

105. The regulations expressly govern the revocation of such release.

106. Under 8 C.F.R. § 241.4(l)(1), an individual released under an order of supervision or other conditions of release who is returned to custody must be notified of the reasons for revocation and afforded a prompt informal interview at which he can respond to those reasons.

107. Section 241.4(l)(2) further identifies the officials authorized to revoke release and the circumstances under which revocation may occur.

108. DHS itself promulgated these requirements.

109. DHS chose to limit who may revoke supervised release.

110. DHS chose to require notice of the reasons for revocation.

111. DHS chose to require a prompt opportunity for the affected individual to respond.

112. These requirements are not optional simply because the Executive Branch has changed its immigration-enforcement priorities.

113. Under the settled Accardi doctrine, an executive agency must comply with the binding regulations it promulgates. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954).

114. The Fifth Circuit likewise holds that an executive agency is bound by its own regulations and that failure to follow those regulations renders agency action invalid. *Gulf States Mfrs., Inc. v. NLRB*, 579 F.2d 1298, 1308 (5th Cir. 1978).

115. This principle has particular force where agency procedures protect individual liberty. *See United States v. Caceres*, 440 U.S. 741, 749, 751–52 & n.14 (1979); *Vitarelli v. Seaton*, 359 U.S. 535, 539–40, 546–47 (1959).

116. The Southern District of Texas applied these principles in circumstances strikingly similar to those presented here in *Villanueva Herrera v. Tate*.

117. Villanueva had received withholding of removal, had been released under supervision for years, and was suddenly re-detained while DHS searched for a third country.

118. Judge Hittner held that DHS was required to comply with § 241.4(l), including the regulation's limitations on who may revoke release, its requirement that the individual receive notice of the reasons for revocation, and its requirement of a prompt informal interview.

119. Because DHS failed to establish compliance, the court granted Villanueva's habeas petition and ordered his immediate release.

120. Upon information presently available to Petitioner, Respondents have similarly produced no valid contemporaneous revocation decision establishing: a. who revoked Petitioner's release; b. whether that official possessed authority under § 241.4(l)(2); c. the legally permissible reason relied upon; d. when revocation occurred; e. what written notice was provided to Petitioner; or f. when Petitioner received the required opportunity to respond.

121. Respondents cannot cure failure to comply with mandatory regulations through litigation-created explanations after the fact.

122. Petitioner's re-detention without compliance with mandatory regulatory procedures violates federal law and the Fifth Amendment under Accardi.

**THIRD CLAIM FOR RELIEF**
**PROCEDURAL DUE PROCESS — ARBITRARY REVOCATION OF LONGSTANDING SUPERVISED LIBERTY**

123. Petitioner repeats and realleges all preceding paragraphs.

124. Petitioner lived openly in the community for approximately fourteen years following DHS's decision to release him after his withholding grant.

125. He maintained federally issued employment authorization, worked, supported his United States citizen spouse and children, and remained available to immigration authorities.

126. The Government therefore did not merely decline to release a newly detained individual. It extinguished an established period of conditional liberty lasting approximately fourteen years.

127. Freedom from physical restraint lies at the core of the liberty protected by the Fifth Amendment. *Zadvydas*, 533 U.S. at 690; *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

128. Conditional liberty is itself constitutionally significant. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Young v. Harper*, 520 U.S. 143, 147–49 (1997).

129. Whatever authority DHS possesses to revoke release, it may not extinguish years of established liberty arbitrarily and without the procedures required by its own regulations and the Due Process Clause.

130. Respondents' re-detention of Petitioner without adequate notice, without a meaningful opportunity to respond, and without demonstrating compliance with governing revocation procedures violates procedural due process.

## FOURTH CLAIM FOR RELIEF
## UNLAWFUL CIRCUMVENTION OF EXISTING WITHHOLDING PROTECTION THROUGH FORESEEABLE ONWARD REMOVAL

131. Petitioner repeats and realleges all preceding paragraphs.

132. The United States has already made a binding determination that Petitioner may not be removed to Mali under INA § 241(b)(3).

133. DHS cannot accomplish indirectly through a third country what federal law prohibits it from accomplishing directly.

134. If removal to Ghana creates a substantial and foreseeable danger that Petitioner will thereafter be transferred to Mali, DHS must afford Petitioner a meaningful opportunity to raise that danger before relinquishing custody to Ghanaian authorities.

135. The Southern District of Texas expressly recognized this concern in *Villanueva Herrera*, explaining that the protections governing third-country removal address the danger that a receiving third country might simply return the protected individual to his home country.

136. Allowing DHS to avoid an operative withholding order by transferring Petitioner to an intermediary country with no meaningful process concerning foreseeable onward removal would render § 1231(b)(3) ineffectual.

137. Respondents may therefore not remove Petitioner to Ghana unless and until he has a meaningful opportunity to raise and adjudicate his country-specific and onward-removal protection claims.

**IRREPARABLE HARM AND NEED FOR IMMEDIATE RELIEF**

138. Petitioner faces imminent deportation.

139. He has already been prepared for removal and given his civilian clothing.

140. No later award of damages can remedy removal into a foreign sovereign's custody.

141. Once Petitioner is outside the United States, this Court's ability to preserve the status quo and afford meaningful relief may be gravely impaired.

142. The threatened injury also implicates persecution, torture, detention, and onward transfer to Mali—the country from which the United States has already granted Petitioner withholding protection.

143. The deprivation therefore cannot meaningfully be repaired after it occurs.

144. By contrast, a temporary prohibition against removal merely preserves the status quo long enough for Respondents to provide the process that federal law requires.

145. Nothing requested by Petitioner prevents DHS from ultimately executing a lawful removal to a lawful destination after all applicable statutory and constitutional safeguards have been satisfied.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that the Court:

1. Assume jurisdiction over this action pursuant to 28 U.S.C. § 2241 and 28 U.S.C. § 1331
2. Direct Respondents pursuant to 28 U.S.C. § 2243 to show cause immediately why the writ should not issue;
3. Immediately enjoin and restrain Respondents from removing Petitioner from the United States to Ghana, Mali, or any other third country pending further order of this Court;
4. Enjoin Respondents from transferring Petitioner from Prairieland Detention Center for the purpose of effectuating international removal while Petitioner's emergency request for judicial relief remains pending;
5. Declare that Respondents may not remove Petitioner to Ghana or another newly proposed third country without providing meaningful written notice to Petitioner and counsel identifying the country of proposed removal;
6. Declare that Respondents must afford Petitioner a meaningful opportunity to raise withholding-of-removal and Convention Against Torture claims concerning the newly proposed country, including any claim based upon foreseeable onward removal to Mali;
7. Require Respondents, before effectuating third-country removal over Petitioner's asserted fear, to provide a full and fair opportunity for adjudication of Petitioner's country-specific protection claim before a neutral adjudicator, consistent with INA § 241(b)(3), the applicable CAT regulations, and Matter of A-S-M-;
8. Declare that Respondents violated federal law and the Accardi doctrine by revoking Petitioner's longstanding supervised release without complying with applicable mandatory regulations, to the extent Respondents cannot establish lawful revocation under 8 C.F.R. § 241.4(l);
9. Order Respondents to produce immediately all records relating to:

a. revocation of Petitioner's supervision or release;
b. the identity and authority of the official who ordered revocation;
c. any notice and informal interview conducted pursuant to § 241.4(l);
d. DHS's identification of Ghana as a proposed country of removal;
e. any notice provided to Petitioner concerning Ghana;
f. any travel document issued or obtained for Petitioner;
g. any diplomatic assurance relied upon concerning Petitioner's removal to Ghana;
h. any agreement, representation, or assurance concerning Ghana's treatment or onward removal of Petitioner; and
i. Petitioner's scheduled removal date and itinerary;

10. Issue the writ and restore Petitioner to his prior conditions of supervision;

11. Alternatively, order such additional process concerning Petitioner's custody as this Court determines necessary to remedy Respondents' failure to comply with mandatory regulatory requirements;

12. Grant such other and further relief as the Court deems just and proper.

Dated: July 29, 2026

*/s/Reuben S. Kerben, Esq.*
Reuben S. Kerben, Esquire
8002 Kew Gardens Road, Suite 307
Kew Gardens, NY 11415
(718)255-8586
rk@klf.nyc

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, Moussa Diawara, and submit this verification on Petitioner's behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 29th day of July, 2026.

*/s/Reuben S. Kerben, Esq.*
Reuben S. Kerben, Esquire
8002 Kew Gardens Road, Suite 307
Kew Gardens, NY 11415
(718)255-8586
rk@klf.nyc